IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:11-CR-135-D

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| KENDALL LADELL BLUE, | ) | |
| | ) | |
| Defendant. | ) | |

On March 31, 2020, Kendall Ladell Blue ("Blue" or "defendant") filed a pro se motion for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 164].[1] Blue then filed numerous motions to amend [D.E. 168, 169, 171, 172, 173].[2] On July 10, 2021, the United States responded in opposition to Blue's motion for compassionate release [D.E. 176]. As explained below, the court denies Blue's motion for compassionate release.

I.

On October 25, 2011, a grand jury sitting in the Eastern District of North Carolina charged Blue with conspiracy to distribute and possess with the intent to distribute 50 grams or more of cocaine base (crack) in violation of 21 U.S.C. §§ 841 and 846 (count one), distributing 50 grams or more of cocaine base (crack) in violation of 21 U.S.C. § 841(a)(1) (counts two and three), using and

---

[1] Although Blue captioned his motion as a motion for a sentence reduction under section 404 of the First Step Act, his arguments are entirely based on the compassionate release statute and Blue seeks compassionate release in his prayer for relief. See [D.E. 164]. Accordingly, the court considers Blue's motion under 18 U.S.C. § 3582.

[2] The court grants Blue's motions to amend and has considered them in connection with Blue's motion for compassionate release.

carrying a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (counts four and six), and distributing five grams or more of cocaine base (crack) in violation of 21 U.S.C. § 841(a)(1). See [D.E. 1].

On August 6, 2012, the court granted the government's unopposed motion to amend the indictment to account for Dorsey v. United States, 567 U.S. 260 (2012), which held that the Fair Sentencing Act applied to a defendant who was sentenced after the effective date of the Fair Sentencing Act (i.e., August 3, 2010), even if the defendant's criminal conduct predated that date. See [D.E. 118] 10–11. Because Blue's offense conduct predated August 3, 2010, Blue obtained the benefit of the Fair Sentencing Act. As a result of the amendment to the indictment, the amount of crack cocaine charged in counts one, two, and three dropped from 50 grams to 28 grams, and the amount of crack cocaine charged in count five dropped from five grams to a quantity of crack. See id. Blue pleaded not guilty to the charges.[3]

On August 8, 2012, a jury found Blue guilty of counts one, two, three, and five and not guilty of counts four and six. See [D.E. 90]. The jury made specific findings as to drug weight. See id. On March 6, 2013, the court held Blue's sentencing hearing. See [D.E. 110, 112]. At the hearing, the court adopted the facts as set forth in Presentence Investigation Report ("PSR"). See Fed. R. Crim. P. 32(i)(3)(A)–(B); Sent. Tr. [D.E. 119] 6; PSR [D.E. 104]. After ruling on the objections to

---

[3] Even if the court considered Blue's motion under section 404(b) of the First Step Act, the court would deny the motion under section 404(c) because the court granted the government's motion to amend the indictment, Blue was tried and convicted based on the Fair Sentencing Act's amended drug weights, and the court sentenced Blue accordingly. See First Step Act, § 404(c), 132 Stat. at 5222 ("No court shall entertain a motion under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with . . . the Fair Sentencing Act of 2010."). Additionally, the court's analysis under 18 U.S.C. § 3553(a) applies equally apply under section 404(b) and counsels against reducing Blue's sentence. See, e.g., United States v. Lancaster, 997 F.3d 171, 175 (4th Cir. 2021).

2

the PSR, the court calculated Blue's offense level to be 36, his criminal history category to be I, and his advisory guideline range to be 188 to 235 months' imprisonment. See Sent. Tr. at 59–60; [D.E. 113] 1. After considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Blue to 252 months' imprisonment. See [D.E. 110, 112]; Sent. Tr. at 81–86. Blue appealed. On March 13, 2015, the United States Court of Appeals for the Fourth Circuit affirmed Blue's conviction and sentence. See United States v. Blue, 603 F. App'x 162 (4th Cir. 2015) (per curiam) (unpublished). Blue did not seek a writ of certiorari.

On January 8, 2018, Blue filed a motion to vacate under 28 U.S.C. § 2255 based on ineffective assistance of counsel. See [D.E. 146]. On March 29, 2018, the government filed a motion to dismiss and a memorandum in support. See [D.E. 151, 152]. On April 24, 2018, Blue responded in opposition. See [D.E. 154]. On January 29, 2019, the court granted the government's motion to dismiss, dismissed Blue's section 2255 motion, and denied a certificate of appealability. See [D.E. 159].

On September 30, 2019, Blue moved for a sentence reduction under 18 U.S.C. § 3582(c)(2), U.S.S.G. § 1B1.10, and Amendment 782. See [D.E. 161]. On October 7, 2019, Blue withdrew his motion. See [D.E. 162, 163]. On March 31, 2020, Blue moved for compassionate release. See [D.E. 164]. The government opposes the motion. See [D.E. 176]. On January 27, 2021, the BOP released Blue to home confinement. See [D.E. 176-2]; see also https://www.bop.gov/inmateloc/ (search by inmate number) (last visited Nov. 23, 2021).

II.

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a

3

sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine "that the defendant is not a danger to the safety of any other person or the community." Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements issued by the" United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with "a serious deterioration in physical and mental health" due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. U.S.S.G. § 1B1.13 cmt. n.1.[4] Application note 2 states that

---

[4] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    (A) Medical Condition of the Defendant.—

4

"an extraordinary and compelling reason need not have been unforeseen at the time of sentencing

---

       (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

       (ii) The defendant is—

           (I) suffering from a serious physical or medical condition,

           (II) suffering from a serious functional or cognitive impairment, or

           (III) experiencing deteriorating physical or mental health because of the aging process,

       that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

  (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

  (C) Family Circumstances.—

       (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

       (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

  (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1 (emphasis omitted).

in order to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, "the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, 997 F.3d 181, 186 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir. 2021), cert. denied, No. 21-5624, 2021 WL 4733616 (U.S. Oct. 12, 2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "U.S.S.G. § 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31 (cleaned up). Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 997 F.3d at 186; McCoy, 981 F.3d at 283–84. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–09 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

III.

Blue seeks compassionate release. See [D.E. 164]. Blue sought no administrative relief before filing his motion for compassionate release, and the government seeks dismissal on that ground. See [D.E. 176] 17–18; [D.E. 176-1]; cf. United States v. Muhammad, 16 F.4th 126, 130 (4th Cir. 2021). Accordingly, the court denies Blue's motion for failure to exhaust administrative remedies.

Alternatively, the court denies Blue's motion on the merits. Blue seeks compassionate release pursuant to section 3582(c)(1)(A). See [D.E. 164]. In support, Blue cites his health conditions (diabetes and high blood pressure), family circumstances, rehabilitative efforts, and release plan. Blue does not argue that the COVID-19 pandemic is a basis for reducing his sentence.

In support of his motion for compassionate release, Blue cites his diabetes and high blood pressure. See [D.E. 171, 172, 173]. As for the "medical condition of the defendant" policy statement, the policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Blue does not argue that his health conditions substantially diminish his ability to provide self-care while incarcerated or on home confinement. Furthermore, Blue noted that the BOP treated both Blue's diabetes and high blood pressure with medication while Blue was incarcerated. See [D.E. 171, 172]. Thus, reducing Blue's sentence is inconsistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

Blue cites family circumstances as warranting compassionate release. Specifically, Blue's daughter was placed into the foster care system in 2020 after the Robeson County Department of Social Services ("DSS") concluded that two of Blue's family members could no longer properly care

7

for Blue's daughter. See [D.E. 168-1]. DSS attempted to locate other relatives who could care for Blue's daughter. See [D.E. 168, 168-1]. Blue argues that if released, he would attempt to obtain custody of his daughter. See [D.E. 168] 2.

The "family circumstances" policy statement requires, in relevant part, "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children." U.S.S.G. § 1B1.13 cmt. n.1(C). The policy statement applies to "inmates whose biological or legally adopted child or children ("child") are suddenly without a family member caregiver due to that caregiver's death or incapacitation." BOP Program Statement § 5050.50, at 7 (Jan. 17, 2019), available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf; see also United States v. Bolden, No. CR16-320-RSM, 2020 WL 4286820, at *4 (W.D. Wash. July 27, 2020) (unpublished) (relying on the BOP Program Statement), appeal dismissed, No. 20-30168, 2020 WL 6580183 (9th Cir. Aug. 26, 2020); United States v. Collins, No. 15-10188-EFM, 2020 WL 136859, at *4 n.13 (D. Kan. Jan. 13, 2020) (unpublished) (same); cf. United States v. Taylor, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (unpublished) (cautioning against over reliance on the BOP Program Statement); United States v. Burrell, No. 15-cr-95 (AJN), 2020 WL 7646887, at *2 (S.D.N.Y. Dec. 23, 2020) (acknowledging that a court may find extraordinary and compelling circumstances other than those in the application notes of U.S.S.G. § 1B1.13 or BOP guidance). The court recognizes Blue's daughter's situation. That situation, however, does not fall within the "family circumstances" policy statement. Blue has not alleged the death or incapacity of a caregiver but instead points to the DSS determination that Blue's daughter's caregivers were unfit to be caretakers. Thus, the "family circumstances" policy statement does not apply. Furthermore, Blue's release to home confinement presumably allows him much greater opportunities to attempt to provide care and support for his

8

daughter. Nevertheless, the court considers Blue's family circumstances under the "other reasons" policy statement.

As for the "other reasons" policy statement, the court assumes without deciding that Blue's rehabilitative efforts and family circumstances, taken together, are extraordinary and compelling reasons under section 3582(c)(1)(A). Even so, the section 3553(a) factors weigh against reducing Blue's sentence. See High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Blue is 43 years old and is serving a federal sentence for conspiracy to distribute and possess with the intent to distribute 28 grams or more of crack cocaine, distributing 28 grams or more of crack cocaine (two counts), and distributing five grams or more of crack cocaine. See PSR ¶¶ 1–6. Blue's extensive drug trafficking spanned more than a decade from 1998 to November 2010. See id. ¶ 12. Blue possessed firearms in connection with his drug trafficking and also sold four assault rifles to a co-defendant. See id. ¶¶ 12, 14. When finally caught, Blue obstructed justice by lying about his drug supplier in order to protect family members and by filing a materially false affidavit with the court stating he never gave police officers permission to remove firearms from his vehicle. See id. ¶¶ 13–14. Blue also expressed a desire to have a confidential informant killed so he could not testify in Blue's case. See id. ¶ 13. Over the course of his multi-year drug trafficking conspiracy, Blue was responsible for distributing 26.74 kilograms of crack cocaine, 14.05 kilograms of cocaine, and 68.04 kilograms of marijuana. See id. ¶¶ 12, 14. Blue also is a recidivist with convictions for being a minor in possession of a firearm[5] and possession of marijuana. See id. ¶¶ 16–17.

---

[5] Blue possessed this firearm after he began trafficking drugs. Compare PSR ¶ 16 (stating the conviction was from 1999) with id. ¶ 12 (stating Blue's drug activities began in 1998).

9

The court has also considered Blue's rehabilitative efforts. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 187–91; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Blue incurred no disciplinary infractions while incarcerated. See [D.E. 164-2]. Blue earned his GED and completed some education and vocational training courses. See [D.E. 164-3, 164-5]. Moreover, Blue became more spiritual while incarcerated. See [D.E. 164] 3. The court has also considered the character letters submitted on Blue's behalf and Blue's release plan. See [D.E. 164-1, 164-4, 169].

Having considered the entire record, the section 3553(a) factors, Blue's arguments, the government's persuasive response, Blue's release to home confinement, and the need to punish Blue for his serious criminal behavior, to incapacitate Blue, to promote respect for the law, to deter others, and to protect society, the court denies Blue's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

IV.

In sum, the court GRANTS defendant's motions to amend [D.E. 168, 169, 171, 172, 173] and DENIES defendant's motion for compassionate release [D.E. 164]. Nothing in this order alters the BOP's decision to place Blue on home confinement.

SO ORDERED. This 23 day of November, 2021.

JAMES C. DEVER III
United States District Judge